UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
PARKER, ALEX B., et al.,                  :
                                          :
                    Plaintiffs,           :
                                          :  04 cv 4476 (BSJ)(DCF)
          v.                              :
                                          :  **Opinion and Order**
CITY OF NEW YORK, and THE NEW YORK        :
CITY DEPARTMENT OF JUVENILE JUSTICE       :
                                          :
                    Defendants.           :
----------------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

     Plaintiffs, 327 former and current Juvenile Counselors and
Associate Juvenile Counselors employed by the City of New York's
Department of Juvenile Justice ("DJJ"), filed this action on
June 15, 2004, pursuant to the Fair Labor Standards Act of 1983,
as amended, 29 U.S.C. § 201 et seq. ("FLSA"), against the City
of New York and the DJJ (collectively "Defendants"), alleging
that the City's compensation policies and practices violate the
FLSA.  On February 1, 2007, the parties entered into a partial
settlement agreement, settling three claims, and agreeing to
litigate the three remaining claims at issue here.  Plaintiffs'
remaining claims are that: (1) pursuant to 29 U.S.C. § 207(o)
and associated regulations, Defendants must compensate employees
in cash (rather than compensatory time) for time worked between
35 and 40 hours, in any workweek in which the employee works
more than 40 hours;  (2) Defendants have failed to comply with

1

29 U.S.C. § 207(o)(5), which requires public employers to grant requests for compensatory time off within a reasonable period; and (3) Defendants violate the FLSA's prompt payment requirement by paying overtime that is earned in the second week of a bi-weekly pay period in the paycheck that covers the succeeding pay period. For the reasons that follow, the Court GRANTS summary judgment in favor of Defendants.

## BACKGROUND[1]

As noted above, Plaintiffs in this case are 327 current and former juvenile counselors and associate juvenile counselors ("JCs" and "AJCs") employed by the DJJ and assigned to one of three secure detention facilities and/or to Court Services.[2] JCs are responsible for the custody, supervision, direct care and counseling of the juveniles in DJJ's custody. The DJJ is required by statute to maintain a minimum staff-to-resident ratio of at least one JC per every eight juveniles. N.Y. Comp.

---

[1] This section provides a general background to this action; further details are provided as necessary with respect to the individual claims. It should also be noted that the Court recognizes Plaintiffs' numerous objections to various statements made in Defendants' Local Rule 56.1 submission, largely claiming that many statements are unsupported. As the Second Circuit has noted, "[w]here . . . the record does not support the assertions in a Local Rule 56.1 statement, those assertions should be disregarded and the record reviewed independently," Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001). To the extent that the Court relies upon any statement objected to by Plaintiffs, it has conducted its own independent review of the record before doing so.

[2] The DJJ is a city agency which is comprised of three juvenile secure detention centers. The DJJ has administrative and support offices and also operates non-secure detention facilities.

Codes R. & Regs. tit. 9, § 180.9(c)(15).  On top of the
responsibilities of the JCs, AJCs are responsible for
supervising JCs.  Specifically, AJCs approve and deny JCs'
requests for leave in accordance with DJJ guidelines, complete
basic annual performance appraisals for the JCs, and generally
direct the work of the JCs in accordance with DJJ policies.

Under the provisions of the controlling collective
bargaining agreement (the "Citywide Agreement"), Plaintiffs'
salary is based on a 35 hour workweek. (See Pls.' Rule 56.1
Statement ¶ 8; Defs.' Resp. to Pls' Rule 56.1 Statement ¶ 8.)
Plaintiffs are scheduled to work five shifts, commonly called
"tours," each week.  During each tour, JCs are scheduled to
receive an unpaid duty-free hour lunch each tour.  Throughout
the relevant period, DJJ has had a shortage of JCs which
resulted in JCs regularly working through their lunch hours or
working overtime tours in order to maintain the statutory staff-
to-resident ratio.  Accordingly, since at least June 2001, the
Plaintiffs have regularly worked more than 35 hours in a
workweek.[3]

The hours between the contractual maximum hours as set
forth in an employment agreement and the FLSA statutory maximum
of 40 hours are commonly referred to as "gap time" hours.  In

---

[3] In fact, it is undisputed that Plaintiffs regularly worked more than 40
hours in a workweek.

this case, the gap-time hours are those worked between 35 and 40 hours because the hours worked below 35 are compensated according to the collective bargaining agreement and hours worked beyond 40 hours are covered by the overtime provisions of the FLSA.

During the relevant period, for hours worked between 35 and 40, Plaintiffs were provided with either compensatory time or paid in cash both of which are calculated at the straight time rate. When Plaintiffs are given a choice between earning cash or compensatory time for hours worked between 35 and 40 hours, they generally choose cash.[4] For the most part, Plaintiffs who have received compensatory time for working these hours, did not request to receive this type of payment.[5]

**DISCUSSION**

I. Plaintiffs' Compensatory Time Claims

Two of Plaintiffs' three remaining claims focus on Defendants' policies with respect to the payment of and use of compensatory time; they contend that Section 207(o) mandates that Defendants pay Plaintiffs in cash rather than compensatory time for gap-time hours and that Defendants do not grant Plaintiffs' requests to use compensatory time within a

---

[4] Defendants accept this fact as undisputed for the purposes of this motion only. (See Defs.' Resp. to Pls.' Rule 56.1 Statement ¶ 17.)

[5] Defendants accept this fact as undisputed for the purposes of this motion only. (See Defs.' Resp. to Pls.' Rule 56.1 Statement ¶ 17.)

4

reasonable period as required by Section 207(o)(5).  For the reasons that follow, Plaintiffs' contentions are unavailing.

A.    The FLSA and Compensatory Time

1.    The FLSA, Generally

"The FLSA . . . was enacted to ensure that employees receive a fair day's pay for a fair day's work."  Gorman v. Consolidated Edison Corp., 488 F.3d 586, 589 (2d Cir. 2007) (internal quotations omitted).  The Supreme Court has noted that "[t]he principal congressional purpose in enacting the [FLSA] was to protect all covered workers from substandard wages and oppressive working hours," Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 739 (1981), and observed that the protections of the FLSA encompass "an individual employee's right to a minimum wage and to overtime pay," id. at 740.

Section 207 of the FLSA, entitled "Maximum hours," governs overtime pay, and provides generally that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  "Although this requirement did not initially apply to public-sector employers, Congress amended the FLSA to subject States and their political subdivisions to its constraints, at first on a limited basis,

. . . and then more broadly." Christensen v. Harris County, 529
U.S. 576, 579 (2000). "[T]o mitigate the effects of applying
the FLSA to States and their political subdivisions," Congress
passed the Fair Labor Standards Amendments of 1985, which
"permit States and their political subdivisions to compensate
employees for overtime by granting them compensatory time at a
rate of 1 1/2 hours for every hour worked." Id. at 579.

2.   Compensatory Time

     The compensatory time amendment, Section 207(o), provides
in pertinent part that

> Employees of a public agency which is a State, a
> political subdivision of a State, or an interstate
> governmental agency may receive, in accordance with
> this subsection and in lieu of overtime compensation,
> compensatory time off at a rate not less than one and
> one-half hours for each hour of employment for which
> overtime compensation is required by this section.

29 U.S.C. § 207(o)(1) (emphases added).  Although a public
employer is not required to grant compensatory time under this
provision, if it does, "the FLSA expressly regulates some
aspects of accrual and preservation of compensatory time."
Christensen, 529 U.S. at 580.

     For example, relevant to this case, Section 207(o)(5)
mandates that employees who have accrued compensatory time and
have requested its use "[s]hall be permitted by the employee's
employer to use such time within a reasonable period after

making the request if the use of the compensatory time does not unduly disrupt the operations of the public agency."

B.    The Gap-Time Claim

Despite both the FLSA's general and Section 207's specific silence on gap-time, Plaintiffs contend that the FLSA nevertheless requires that when an employee works beyond 40 hours in a workweek (i.e., works FLSA overtime), that the employee must be paid for his/her gap time hours in cash.[6] Specifically, Plaintiffs argue that because section 207(o) is silent with respect to the use of compensatory time for gap-time hours, such a practice is excluded from the "narrow exemption" contained in 207(o).  (Pls.' Mem. at 27.)  The Court disagrees.

Contrary to Plaintiffs' assertions, nothing in Section 207(o) requires Defendants to compensate those gap hours in cash; its silence with respect to the use of compensatory time does not denote ambiguity that permits an interpretation imposing such a requirement.  Rather, such silence in light of the statutory scheme as a whole denotes that restrictions on compensatory time for the payment of gap-time hours fall outside of the ambit of the FLSA.  While the FLSA expressly regulates the use and accrual of compensatory time for overtime hours in a

---

[6] The parties do not dispute that under the FLSA and DOL's regulations all hours up to 40 must be compensated at the straight time rate. See 29 C.F.R. § 778.317.  The parties disagree only as to whether the form of compensation for the gap-time hours is limited to cash.

number of ways,[7] the statutory scheme does not expressly or otherwise prohibit or limit the use of compensatory time as compensation for gap-time hours. Such an omission makes sense, because payment for gap-time hours under these circumstances simply does not implicate the "two central themes of the FLSA . . . [--]its minimum wage and overtime requirements," Arnold v. Arkansas, 910 F. Supp. 1385, 1392 (E.D. Ark. 1995), and thus falls outside of the scope of the FLSA.

The legislative history to the 1985 amendments provides further support of this reading of the text of the FLSA. Following the Supreme Court's opinion in Garcia v. San Antonio Transit Authority, 469 U.S. 528 (1985), which extended the protections of the FLSA to state and municipal employees, Congress assessed the impact this would have on state and local governments. See H.R. Rep. No. 99-331 at 8 (1985). In connection with this effort, Congress sought to clarify the employment practices permitted by the Act. As the House Report reveals, Congress specifically considered the issue of gap-time compensation and sought reassurance from the DOL that it was permissible under the FLSA to offer compensatory time for gap-time hours even in workweeks over 40 hours. See H.R. Rep. No.

---

[7] For example, Section 207(o)(3) imposes limitations on the total number of hours of FLSA compensatory time that a public employee may accrue; § 207(o)(5) imposes a time frame for employers to permit their employees to use compensatory time; and § 207(o)(3)(B) entitles employees to be paid out for remaining comp time when they terminate their employment.

99-331 at 12.  In response to a written inquiry from a

municipality regarding whether it could continue to provide

compensatory time for gap-time hours, the DOL stated that:

> the practice of providing time-off with pay for ...
> hours of work, which are not FLSA overtime hours, can
> be continued provided two conditions are met: (1) The
> first condition is that wages which are paid to an
> employee must, when divided by his or her work period,
> average no less than the minimum wage[; and] (2) The
> second condition is that the employee must be paid not
> less than one and one-half times his or her regular
> rate of pay for each FLSA overtime hour of work.
> Whenever these two conditions are met, the employee
> may be granted time-off with pay for hours of work
> which are not FLSA overtime hours under section 7(k).[1]

Id. at 14.

Nonetheless, Plaintiffs argue that the FLSA overtime

provisions are ambiguous with respect to gap time, thus

requiring the Court to defer to the Department of Labor's

interpretation of the statute pursuant to Chevron U.S.A.

Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842–

43 (1984), unless it is unreasonable.  The Court agrees

that the FLSA's silence with respect to compensatory time

in certain situations warrants deference to the DOL's

regulations issued pursuant to its rulemaking authority.

However, Plaintiffs' interpretation of the relevant

regulation is untenable.

In support of their argument, Plaintiffs rely on the

DOL regulation interpreting Section 207(o), governing

compensatory time earned for hours worked below the
statutory maximum, referred to as "other compensatory
time." 29 C.F.R. § 553.28. Section 553.28(a) provides
that:

> Compensatory time which is earned and accrued by an
> employee for employment in excess of a non-statutory
> (that is non FLSA) requirement is considered "other"
> compensatory time. . . . For example, a collective
> bargaining agreement may provide that compensatory
> time be granted to employees for hours worked in
> excess of 8 in a day or for working on a scheduled day
> off in a non-overtime workweek. The FLSA does not
> require compensatory time to be earned in such
> situations.

29 C.F.R. § 553.28(a) (emphases added). Plaintiffs argue that
section 553.28(a) must be read as prohibiting employers from
using "other compensatory time" to compensate employees for gap
time hours in overtime workweeks, because had the "DOL intended
to allow public employers to compensate employees for gap time
hours with 'other compensatory time' in overtime workweeks, it
would have refrained from using the 'non-overtime workweek'
modifying language in its example of when 'other compensatory
time' could be provided to employees." (Pls.' Mem. at 22.) The
Court finds Plaintiffs' reading of the regulation a strained one
at best--it is manifestly unreasonable to interpret a single
permissive example as necessarily imposing a mandatory blanket
requirement.

Furthermore, the Court finds that Section 553.28, read in its entirety, supports the position that the FLSA permits but does not require the use of compensatory time as compensation for gap-time hours in overtime workweeks. For example, section 553.28(d) provides that:

> The FLSA does not require that the rate at which "other" compensatory time is earned has to be at a rate of one and one-half hours for each hour of employment. The rate at which "other" compensatory time is earned may be some lesser or greater multiple of the rate or the straight-time rate itself.

29 C.F.R. § 553.28(d). And Section 553.28(e) provides that "[t]he requirements of [Section 207(o)], including the limitations on accrued compensatory time, do not apply to 'other' compensatory time as described above." Read together, these regulations further demonstrate that the 1985 FLSA Amendments pertaining to compensatory time were intended to provide maximum flexibility to municipalities so long as their compensatory time policies did not run afoul of the FLSA's minimum wage and overtime protections.

Plaintiffs next urge the Court to look beyond the plain language of the statutory provisions and relevant DOL regulations and defer to two DOL Opinion letters which summarily take the position that an employee must be paid in cash for all hours worked up to 40 hours in an overtime workweek. See W&H Adm'r Op. Letter, October 8, 2004; see also W&H Adm'r Op.

11

Letter, September 20, 2004.  The Court declines to defer to the
DOL's interpretation of its regulation.

Interpretations such as those contained in informal opinion
letters which are not subject to the rigors of the
Administrative Procedure Act, including public notice and
comment, are not entitled to Chevron deference.  See Christensen
v. Harris County, 529 U.S. 576, 586-87 (2000).  Although an
agency's interpretation of its own regulation is entitled to
deference where the regulation is ambiguous, see Auer v.
Robbins, 519 U.S. 452, 461 (1997), here, the relevant regulation
is unmistakably and unambiguously permissive rather than
mandatory.  See Christensen, 529 U.S. at 587-88 (declining to
defer to DOL's interpretation of a regulation contained in an
opinion letter where DOL interpreted a permissive regulation as
prohibiting a mandatory compensatory time usage policy).

Of course, "interpretations contained in formats such as
opinion letters are entitled to respect . . . but only to the
extent that those interpretations have the power to persuade."
Christensen, 529 U.S. at 587 (internal citation and quotation
marks omitted).  Here, the Court does not find that the
conclusory statements in these two opinion letters, requiring,
without explanation, the payment of cash rather than
compensatory time for gap-time hours, offer a persuasive or
reasonable interpretation of the FLSA and 29 C.F.R. § 553.28.

And thus, even if the Court were to find § 553.28 ambiguous, it would nevertheless decline to defer to DOL's interpretation under _Auer_ because it is unsupported, unpersuasive, and unreasonable.

Plaintiffs' final argument is that because the Citywide Agreement provides that non FLSA compensatory time is converted into sick leave after 120 days, the payment of non FLSA compensatory time in effect violates the FLSA because it results in an employee receiving less than his or her straight rate of pay for the gap-time hours worked in overtime weeks. This occurs because when an employee leaves the agency with fewer than ten years of service, he or she receives no remuneration for the sick leave bank; an employee who separates from the agency after ten years of service receives one-half of the unused sick leave balance up to a maximum of 120 days of service. (See Pls.' Rule 56.1 Statement ¶ 19; Defs' Resp. ¶ 19.)

If the City had in fact engaged in this practice there might be a serious question as to whether such a practice violates the FLSA. However, it is undisputed that this provision has not been enforced at any time throughout the time period at issue.[8] Plaintiffs' non-FLSA compensatory time has not

_____
[8] The City, relying on statements made by Walter Ellis, the Deputy Director of Human Resources of the New York City Department of Juvenile Justice and one of the Defendants' Rule 30(b)(6) witnesses, has also declared that it does

been converted into sick leave after 120 days.  Therefore,
Plaintiffs have not established that this provision in the
Citywide Agreement has resulted in any devaluation of their non
FLSA compensatory time which might result in violations of the
FLSA.[9]

C.    The Compensatory Time Usage Claim

     Plaintiffs also allege that Defendants violate Section
207(o)(5) by their alleged refusal to grant requests for the use
of compensatory time within a "reasonable period" as required by
the FLSA.  For the reasons that follow, this claim is also
unavailing.

1.    Background

     Throughout the relevant period, when Plaintiffs worked more
than 40 hours in a week ("statutory overtime") they have, on
occasion, requested to be paid in compensatory time for these
overtime hours.[10]  This compensatory time is referred to as "FLSA
compensatory time" because the payment and use of compensatory

---

not intend to convert non FLSA compensatory time into sick leave in the
future. (Defs.' Mem. at 18.)  Nevertheless, the Court has not relied on this
declaration in reaching its decision.  In determining whether Defendants have
violated the FLSA the Court looks to evidence of past and present conduct and
does not adjudicate potential future conduct.
[9] Although the Court does not reach this issue, the Defendants seem to
acknowledge that were they to enforce this provision in the future, a
question as to its legality under the FLSA might well arise.
[10] It is undisputed that when Plaintiffs are ordered to work overtime
Plaintiffs may select to be compensated in either compensatory time or cash
for some of those overtime hours.  However, Plaintiffs claim that when
Plaintiffs are ordered to work through their lunch hours, the first 1.25
hours of overtime worked is not compensated in cash regardless of the form of
compensation Plaintiffs select.  (See Pls.' Resp. to Defs' Rule 56.1
Statement.)

time for hours over 40 in a workweek is regulated by the FLSA.
The FLSA compensatory time paid for hours worked in excess of
forty hours in a week is computed at the premium rate of time
and one-half (<u>i.e.</u>, one and a half hours of compensatory time
paid for each hour of overtime worked), as required by the
FLSA's overtime provisions.

When a DJJ employee wishes to use the compensatory time
earned, she must submit a "Request for Leave" form to her
supervisors listing the date(s) she would like to take off from
work, listing the amount of time she is requesting to use from
their accrued compensatory time bank, and the reason for the
request.[11]  (<u>See</u> Defs.' Ex. M.)  Under DJJ policy, Request for
Leave forms must be submitted at least twenty four hours prior
to the time the employee plans to take off.  (<u>Id.</u>)  Plaintiffs
contend that as a practical matter JCs routinely make a verbal
request to the AJCs for a particular day off prior to submitting
any written request.  (Pls.' Rule 56.1 Statement ¶ 24.)  More
often than not these verbal requests are denied.[12]  Plaintiffs
claim that when these verbal requests are verbally denied,
Plaintiffs are given only one reason: not enough staffing.
(Pls.' Rule 56.1 Statement ¶ 25.)  Plaintiffs assert that once

---

[11] Pursuant to the Citywide Agreement, time will first be taken out of the
FLSA compensatory bank and only once that bank is depleted will authorized
use of compensatory time be subtracted from the "Non" FLSA compensatory time
bank. (<u>See</u> Article IV § 10(b) of the Citywide Agreement, Defs.' Ex. I.)
[12] Defendants accept this fact as undisputed for the purposes of this motion
only.  (Defs.' Resp. to Pls.' Rule 56.1 Statement ¶ 24.)

these verbal requests have been verbally denied, no

documentation regarding these requests to use compensatory time

is submitted because the requests have already been denied.[13]

(Pls.' Rule 56.1 Statement ¶ 24.)  Defendants contend that

verbal requests to use compensatory time are not in compliance

with DJJ's policy.  (See Defs.' Rule 56.1 Statement ¶ 96.)

It is undisputed that during the relevant period Test

Plaintiffs requested and were permitted to use accrued

compensatory time to take full days and consecutive days off.

It is also undisputed that during the relevant period,

Defendants have denied Plaintiffs' requests to use accrued FLSA

compensatory time.  Plaintiffs claim that these requests were

made in advance of the day the JCs wished to have off and at

times when compensatory time balances in their compensatory time

bank would cover the requested usage.  (Pls.' Rule 56.1

Statement ¶¶ 24, 31.)

2.   Discussion

Section 207(o)(5) of the FLSA explicitly provides that

requests for compensatory time off must be granted within a

reasonable period after the request is made unless the use would

"unduly disrupt the operations of the public agency."  29 U.S.C.

§ 207(o)(5).  The parties agree that in accordance with a recent

---

[13] Defendants accept this fact as undisputed for the purposes of this motion
only. (Defs.' Resp. to Pls.' Rule 56.1 Statement ¶ 24.)

opinion in this district, "the 'reasonable period' referenced in section 207(o)(5) refers to the time period between the date for which the employee applies for leave and the date on which that leave is actually granted." Scott v. City of New York, 340 F. Supp. 2d 371, 380 (S.D.N.Y. 2004). The phrase "unduly disrupts" in the provision is not subsumed by the words "reasonable period" but "provides an exception to the employer's statutory obligation to accommodate the employee's request within a 'reasonable period.'" Scott, 340 F. Supp. 2d at 380. The DOL has interpreted the term "unduly disrupt" in a regulation, 29 C.F.R. § 553.25, which provides:

> Unduly disrupt. When an employer receives a request for compensatory time off, it shall be honored unless to do so would be unduly disruptive to the agency's operations. Mere inconvenience to the employer is an insufficient basis for denial of a request for compensatory time off. For an agency to turn down a request from an employee for compensatory time off requires that it should reasonably and in good faith anticipate that it would impose an unreasonable burden on the agency's ability to provide services of an acceptable quality and quantity for the public during the time requested without the use of the employee's services.

29 C.F.R. § 553.25(d). The regulation explicitly states that the "unreasonable burden" at issue in the "unduly disrupt" inquiry applies to the "agency's ability to provide services." A financial burden, therefore, does not on its own, rise to the level of an undue disruption of the operation of a public

agency.  <u>See</u>, <u>e.g.</u>, <u>DeBraska v. City of Milwaukee</u>, 131 F. Supp.

2d 1032, 1037 (E.D. Wis. 2000).

In this case, it is undisputed that in order to maintain

the statutory staff-to-resident ratio, the DJJ has at times

denied requests to use compensatory time when granting such

requests would result in insufficient coverage.  Plaintiffs

allege that when requests to use compensatory time on a specific

date are denied, Defendants make no attempt to permit the use of

compensatory time within a reasonable time period preceding or

following the date(s) requested.[14]  Specifically, Plaintiffs

argue that because Defendants do not provide Plaintiffs with an

alternative date on which the compensatory time could be used

when denying requests, as a matter of law the requests are not

granted within a reasonable period from the time that the

request is made.  Plaintiffs further claim that these requests

are denied without any assessment of undue disruption to

Defendants' operations.

As an initial matter, the Court is unable to determine as a

matter of law on the basis of the record before it, whether or

---

[14] Plaintiffs also argue that it is undisputed that their verbal requests are
often denied and never subsequently granted.  However, the DCAS manual
explicitly states that employees must submit a written from in order to use
compensatory time.  (<u>See</u> Defs.' Ex. M.)  Therefore, verbal requests to use
compensatory time are not in compliance with DJJ's established procedures.
Plaintiffs do not provide any authority for the proposition that an employer
violates the FLSA if an employee is required to file a written request to use
compensatory time. Of course, one could imagine a situation where the
procedural requirements were so onerous that for all practical purposes they
prevented employees from being able to use their compensatory time.  However,
that is not the situation here.

not Plaintiffs' requests to use compensatory time are granted within a reasonable period.  Plaintiffs have submitted several sworn statements from members of the class that when requests to use compensatory time were denied, they were "never offered an alternative date on which to use" their compensatory time. (See Pls.' Rule 56.1 Statement ¶ 28.)  However, while offering an alternative date when denying a request to use compensatory time would be a legitimate means for an employer to comply with the "reasonable period" standard, the FLSA does not impose any such specific requirement upon public employers.

Further, both parties draw the Court's attention to the Test Plaintiffs' time and leave data in support of their competing arguments with respect to the application of "the reasonable period" standard to this case.  During discovery, Defendants produced compensatory accrual and usage data for all of the Test Plaintiffs for the period from January 1, 2000 through the end of August 2006.  These files contain the amount of compensatory time accrued in a given year and the amount of compensatory time used on an annual basis.

Defendants argue that because the time and leave data show that on average Test Plaintiffs take compensatory time off approximately every thirty days, the City must be granting their requests to use compensatory time within a reasonable period. However, evidence of frequent usage does not necessarily

indicate that the compensatory time system is in compliance with Section 207(o)(5). See, e.g., Beck v. City of Cleveland, 390 F.3d 912 (6th Cir. 2004)(reversing district court's grant of summary judgment in favor of a public employer, despite findings that the employee plaintiffs used an average of 15.2 days of compensatory time annually).

As noted above, the "reasonable" period referenced in that provision of the FLSA refers to the time period between the date for which the employee applies for leave and the date on which that leave is granted. See, e.g., Scott, 340 F. Supp. 2d at 380. To determine whether or not Defendants have complied with the "reasonable period" requirement of Section 207(o)(5), the requested usage dates must be compared with the dates of actual approval. The time and leave data here reveals nothing about Plaintiffs' requested usage dates or the dates on which these requests are actually granted.

For their part, Plaintiffs have submitted evidence demonstrating that in specific instances many months passed between the time a Plaintiff requested to use compensatory time and the date on which compensatory time was actually used. (See Nickerson Decl. ¶¶ 10-14.) Plaintiffs contend that this evidence supports their claim that their requests were denied and they were unable to use their compensatory time within a reasonable period. (See Pls.' Reply at 21-22.) However, this

data proves only that that these employees did not make use of their compensatory time within a reasonable period of their requested date, not that the City failed to make such a date available to them.

However, the Court need not determine whether Plaintiffs' requests were granted within a reasonable period of time, because it finds that the "undue disruption" exception applies. Defendants assert that the DJJ's policy with respect to denying requests to use compensatory time is as follows:

> [t]he request will be granted at the discretion of the agency head.  The practical manner in which this policy is implemented in the three secure detention facilities is that the requests to use compensatory time may be denied if granting the request would impede the operation of the facilities and unlawfully reduce the staff to resident ratios.

(Ellis Decl. ¶ 5.[15])  As a matter of law, the Court finds that

---

[15] Plaintiffs moved to strike paragraph 5 of Ellis' declaration on the grounds that it contradicts his deposition testimony on the subject of DJJ's policy governing the use of compensatory time. Ellis testified at his deposition as follows:

> Q: Under what circumstances will a comp time request be denied?
> A: I will assume that—
> Ms. Molfetta: Don't assume.  Testify what you know.
> A: One of the reasons would be no coverage.
> Q: Is there any other reason why comp time would be denied?
> Ms. Molfetta: You are not asking for specific reasons, you are here talking about policies right?  He can't answer specifics, what happens in a specific situation.
> Q: Is that a policy the City has that when there is no coverage the supervisors will deny comp time?
> A: Yeah, I believe the time of leave regulation that is comp time or annual leave will be given at the discretion of the agency when it is convenient to the agency.

(Ellis Tr. 159-60.)  After examining these statements and considering Plaintiffs' arguments, the Court does not find that Ellis's declaration

this policy does not violate the FLSA.  The statutory staff-to-resident ratio by definition imposes a legal requirement upon the DJJ with which they must comply, and, importantly, reflects a legislative judgment of the minimum level of personnel required to adequately provide "services" to the juvenile residents and to ensure the safety of both staff members and residents.  It is clear to the Court that DJJ's attempts to maintain this minimum standard through the denial of compensatory time requests is based on more than just a mere inconvenience, and indeed reflects DJJ's attempt to avoid the unreasonable burden of violating its statutory mandate.

Further, nothing in the record suggests that the DJJ does not adhere to this policy in determining whether to deny requests to use compensatory time.[16]  It is undisputed that during the relevant period the reason given when DJJ has denied Test Plaintiffs' requests to use compensatory time was

---

statement contradicts his deposition testimony.  Accordingly, the motion to strike paragraph 5 of Walter Ellis's declaration is denied.
[16] The Court acknowledges that several Test Plaintiffs testified that there have been occasions when supervisors changed their request to use compensatory time and instead requested that the time be taken out of their annual or sick leave bank. (See Pls.' Rule 56.1 Statement ¶ 32.)  However, the Court rejects Plaintiffs' contention that this testimony supports the claim that Defendants deny requests to use compensatory time regardless of whether granting the request would cause any undue disruption.  It is undisputed that in these instances the Plaintiffs were able to take the requested time off, it was just removed from a different leave bank. Therefore, this cannot be viewed as a denial to use accrued time.  Further, Plaintiffs have not alleged much less established that they suffered any harm because the time was taken out of another leave bank.

insufficient coverage.[17]  It is also undisputed that during the

relevant period, DJJ has had a shortage of counselors.

Plaintiffs suggest that "defendants have established a

system whereby staffing coverage at the agency is excessively

limited on a constant basis" and argue that "the self-imposed

practice of the agency to maintain bare minimum staffing levels

should not trigger" application of the undue disruption

exception.  (Pls.' Mem. at 17.)  However, there is no evidence

in the record to support the contention that Defendants

intentionally maintain vacancies in order to avoid granting

Plaintiffs' requests to use compensatory time.  Rather,

Defendants have established that throughout the relevant period,

the DJJ, with the assistance of the Department of Citywide

Administrative Services, has attempted to fill vacancies through

the administration of Civil Service Examinations and through

hiring provisional counselors.  (See Ellis Decl. ¶ 9.)

Plaintiffs also claim that Defendants' low staffing

argument is more accurately described as a financial one, citing

to case law which establishes that under the FLSA "a requesting

employee must be granted compensatory time even if to do so

means that the replacement employee must be paid overtime."

Beck, 390 F.3d at 921-22.  Plaintiffs point out that supervisors

---

[17] Plaintiffs also claim that Defendants deny requests for "improper
documentation."  However, as stated above, Defendants are entitled to require
Plaintiffs to follow reasonable procedures in order to use their compensatory
time.

23

do not have the authority to call off-duty counselors in to work for staffing relief purposes. (See Pls.' Rule 56.1 Statement ¶ 34.) Plaintiffs theorize that the need for additional coverage could be resolved by calling off duty employees to work additional shifts, thereby enabling on-duty employees to use their compensatory time. However, the feasibility of this proposal is entirely speculative and is not supported by sufficient evidence to raise a genuine issue of triable fact. As noted, it is undisputed that JCs already work overtime tours on a regular basis in an effort to maintain the statutory staff-resident ratios. Nothing in the record suggests that the DJJ would be able to grant requests to use compensatory time if AJCs were given the authority to call off duty JCs in to work. And the FLSA does not impose such a requirement, nor does it invite courts to become micromanagers of employers' staffing policies.

## II. Plaintiffs' Prompt Payment Claim

Finally, Plaintiffs' allege that DJJ's overtime payment policies, in which overtime payments for the second week in a pay period are not made until the following pay period, violate the prompt payment requirements of the FLSA. For the reasons that follow, Plaintiffs' arguments are unavailing.

## A. Background

The Payroll Management System ("PMS") is the system the City of New York uses to pay all of its employees, including

24

Plaintiffs. The PMS processes the pay for approximately 350,000 active City employees and processes retirement checks for close to half a million retired City employees. Because the payroll is so large, the population of employees to be paid is divided into groups which are processed by the system and paid together. DJJ employees are paid on a bi-weekly basis in what is referred to as Paycycle D.

The Regular Gross Period, also known as the pay period, is comprised of fourteen days, beginning on a Sunday and ending on a Saturday two weeks later. On pay days employees receive their regular wages which covers the Regular Gross Period. DJJ employees are paid on the Friday following the end of the pay period which is 6 days after the end of the pay period. The second week of the Regular Gross Period is referred to as the Anticipatory week because the City pays its employees their regular base salary for that week although the timekeepers do not have the timesheets for that week until after the paychecks have been printed.[18] Payment for the Regular Gross Period is automatic. In other words, PMS automatically issues a check to every employee for his or her regular salary even if the Office of Payroll Administration ("OPA") does not have a time report covering that period.

---

[18] The purpose of the Anticipatory week is to reduce the delay for newly hired City employees.

There are seven timekeepers at DJJ who report to the Deputy Director of Human Resources, Walter Ellis. Under DJJ policy, the employees' time cards for a workweek are supposed to be in the hands of the timekeepers by noon on Tuesday following the workweek covered by the time record. Timekeepers manually enter the information from the employee timecards into an Employee Time Report ("ETR") and then enter the ETR data into PMS. The data are held by PMS until the payroll is calculated. The actual payroll calculation process ("Pay Calc") is performed at midnight on the Saturday at the end of the Regular Gross Period. Thus, timekeepers are required to complete entry of all data for the prior two workweeks into PMS no later than the close of business on Friday before Pay Calc. However, the timekeepers do not receive the time records for the second workweek of the Regular Gross Period (the Anticipatory week) until the Monday after Pay Calc has been processed.

Because any overtime worked during the second week of the Regular Gross Period is not reported to the timekeepers until after the Pay Calc for that week has already occurred, such overtime is never paid in the paycheck covering the pay period in which it was worked. (See Bondy Tr. at 76-77.) Instead, the overtime pay for overtime worked in the second week of the Regular Gross Period is paid in the paycheck that is issued for the following pay period. After an employee submits the time

records showing overtime worked and a supervisor has confirmed that it was worked, a timekeeper completes the ETR and enters it into the PMS. Any overtime worked during the second week of the Regular Gross Period is required to be entered into the PMS before the next Pay Calc because it is considered part of the subsequent ETR Reporting period. (See Bondy Tr. at 66.)

B.    Discussion

Plaintiffs claim that the City's payroll system violates the FLSA's "prompt payment requirement" because overtime worked in Week 2 of the Regular Gross period is paid in the paycheck that is issued for the pay period following the one in which the overtime was worked.

Even though the FLSA is silent with respect to when overtime compensation must be paid under the statute, "courts have long interpreted the statute to include a prompt payment requirement." Rogers v. City of Troy, N.Y., 148 F.3d 52, 55 (2d Cir. 1998)(citing United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 491 (2d Cir. 1960)).

The Second Circuit has held that because the statute does not explicitly address the prompt payment requirement, it is appropriate to consider the DOL's views on when overtime must be paid under the FLSA. See Rogers, 148 F.3d at 57 ("Because the statute does not explicitly address the prompt payment requirement . . . we hold that the statute is ambiguous. It is,

therefore, appropriate to consider the views of the administrative agency charged with the law's enforcement."). The DOL has issued an interpretive bulletin addressing the time of payment for overtime compensation, see 29 C.F.R. § 778.106, to which the Second Circuit has deferred in the absence of a pertinent regulation issued through the formal rulemaking process, see Rogers, 148 F.3d at 55. Section 778.106 provides in relevant part:

> There is no requirement in the Act that overtime compensation be paid weekly. The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. When the correct amount of time cannot be determined until some time after the regular pay period, however, the requirements of the Act will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may the payment be delayed beyond the next payday after such computation can be made.

29 C.F.R. § 778.106 (emphasis added).

Plaintiffs first argue that Defendants have failed to show that the City cannot pay the overtime earned in Week 2 in the regular paycheck covering the pay period, and, therefore, have not demonstrated that they are entitled to "seek shelter within the narrow exception" provided in § 778.106. (Pls.' Reply at 36.) The Court disagrees.

Defendants have demonstrated by a preponderance of the
evidence that overtime worked in Week 2 of the Regular Gross
period cannot be included in the paycheck covering that pay
period.  The record establishes that the Week 2 overtime is not
submitted to the timekeepers until the Monday after the payroll
calculation process has been completed and the checks for that
period have been printed and delivered to the Office of Payroll
Administration.  Defendants have described in extensive detail
the process the City undertakes during the six days between the
Sunday after the Regular Gross Period ends and the pay date on
Friday to ensure that nearly 900,000 current and former
employees receive timely paychecks and retirement benefits,[19] and

_____

[19] Before Pay Calc, DJJ timekeepers have entered all the time records for the
ETR Reporting period into PMS.  After Pay Calc is completed on Sunday,
employees of the City's Financial Information Service Agency ("FISA") perform
quality control tasks, print the checks, box them and prepare the checks to
be trucked to the Office of Payroll Administration for Monday morning
delivery.  After the checks are delivered, OPA begins its own quality control
process.  OPA then places the checks through equipment that signs them.
(Bondy Tr. at 38.)  After the checks are signed, OPA separates the checks by
agency and packages them.  (Id.)
      FISA also sends each agency detailed reports describing the contents of
the payroll for their review.  (See id. at 39.)  The Detailed Payroll report
registers every check that was cut, the amount, the transactions included in
that check, and the totals so that the agency can confirm that its payroll is
accurate.  Each agency, including the DJJ, is instructed to review each page
of the report and to identify any transactions that look out of the ordinary
and report any errors it discovers to OPA so OPA can pull the check and issue
a supplemental payroll for that check.  (Id. at 40-41.)  Once the agency
confirms the accuracy of its payroll, it can certify the payroll.  (Id. at
40.)
      The packages of paychecks are ready for the agencies to pick up from
OPA on Tuesday morning.  Agencies like DJJ with remote locations must
distribute its checks to all of its locations, authorize the payroll, and
distribute the paychecks to its employees.
      On Wednesday following Pay Calc, OPA sends the bank a file containing
the check numbers and check amounts, including the direct deposit file.  (See
Bondy Tr. 44-45.)  The file contains a settlement date of Friday, which is

the Court is satisfied that the City has met its burden to show
that it could not delay the Pay Calc and Post Pay Calc process
so as to include the Week 2 overtime and still complete the
process in time for a Friday payday.

Plaintiffs make a variety of arguments focusing on
theoretical alternatives to the current system that might reduce
the delay in overtime payments.  For example, Plaintiffs argue
that Defendants could establish a process that would shift the
pay calculation date so that the pay calculation could be
performed after the end of the pay period.  They also cite to
testimony from one of Defendants' Rule 30 (b)(6) witnesses that
1) it is possible to compute the overtime within seven days of
it being in the system and 2) the city has the capability to
issue paychecks other than the regular paycheck and 3) the City
has never explored the possibility of issuing a separate check
for Week 2 overtime.  (See Bondy Tr. at 80-85.)

However, these contentions are nothing but conjecture, and
do not create triable issues of material fact.  It cannot be
that Defendants' burden must encompass any theoretically
feasible alternative, no matter the cost or impact upon others.
Rather, as the interpretation issued by the DOL makes clear, the
delay in payment must be minimized to the extent practicable;

payday.  It takes the bank two days to process the payments.  (Id. at 45.)
Paychecks are distributed late on Thursday or on Friday after Pay Calc.

practicability necessarily requires consideration of the reasonableness of any technically possible option. Indeed, the Court finds that potential solutions in the record before it— "delaying the payment to all City employees of their regular gross (base salary) to try to pay some employees overtime worked during [Week 2] in the pay period covering the period they worked overtime," (Bondy Tr. at 73), or issuing a separate paycheck outside the system for a small group of employees—would be eminently impracticable, and that imposing upon Defendants an additional burden of further assessing theoretical alternatives would not only be impracticable but also well outside the scope of the FLSA.

## CONCLUSION

For the aforementioned reasons the Defendants' motion for summary judgment is GRANTED with respect to all claims and, accordingly, Plaintiffs cross motion is DENIED. The Clerk of the Court is directed to enter judgment in favor of Defendants and to close the case.

**SO ORDERED:**

_Barbara S. Jones_
BARBARA S. JONES
UNITED STATES DISTRICT JUDGE


Dated:    New York, New York
          May 13, 2008